UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL RIVERA,<br>    *Plaintiff*,<br><br>v.<br><br>WARDEN JOHN DOE, DEPUTY WARDEN JOHN DOE, UNIT MANAGER JOHN DOE, CORRECTIONAL OFFICER JOHN DOE, and CORRECTIONAL OFFICER JOHN DOE,<br>    *Defendants*. | 3:22-CV-852 (SVN)<br><br><br><br><br><br>January 19, 2023 |

## INITIAL REVIEW ORDER

In this prisoner civil rights action, Plaintiff Angel Rivera, proceeding *pro se*, alleges that five unnamed Connecticut Department of Correction ("DOC") employees violated his right to privacy by forcing him to shower without a curtain and in front of a camera. Plaintiff seeks punitive and compensatory damages against all five Defendants under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). For the reasons set forth below, the Court dismisses Plaintiff's complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

    **I.    LEGAL STANDARD**

Under 28 U.S.C. § 1915A, the Court must review civil complaints filed by prisoners and dismiss any portion of a complaint that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The Court, however, is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

It is well-established that submissions of *pro se* litigants are "reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (summary order) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above; a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (summary order) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even where a plaintiff is proceeding *pro se*, the Court may not

"invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## II. FACTUAL BACKGROUND

The factual allegations in Plaintiff's complaint, as set forth below, are extremely sparse. The Court accepts these allegations as true for purposes of this initial review. *See Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for purposes of section 1915A review, a court "must accept as true all factual matters alleged in a complaint").

In 2021, Plaintiff was held as a pretrial detainee at the Hartford Correctional Center. Compl., ECF No. 1, at 2, 5.[1]  At that time, Plaintiff suffered from post-traumatic stress disorder ("PTSD") resulting from a prior sexual assault. *Id.* at 5.  On one or more occasions in November of 2021, Plaintiff was required to take a shower without a shower curtain while positioned in front of a camera and while there was a female corrections officer working the shift. *Id.*  The complaint suggests, but does not explicitly allege, that the camera was a security camera that streamed video of Plaintiff's nude body. *Id.*

Plaintiff identifies a warden, a deputy warden, a unit manager, and two correctional officers at Hartford Correctional Center as John Doe Defendants. *Id.* at 2–3.  He alleges that "officers were notified and given ample opportunity to fix and address" his concerns. *Id.* at 5.

---

[1] Plaintiff identifies "Hartford Correctional Inst." as his "Correctional facility" and identifies Defendants as officers at "Hartford C.I." Compl. at 2–3.  The Court assumes Plaintiff is referring to Hartford Correctional Center.

**III.   DISCUSSION**

The Court interprets Plaintiff's complaint as alleging violations of his rights under the Fourth Amendment and the ADA.[2]  For the reasons below, the Court dismisses Plaintiff's complaint in full, without prejudice.

    A.  Section 1983 Claim

        *1.  Personal Involvement*

At the outset, Plaintiff's section 1983 claim—which, as discussed in further detail below, appears to assert a violation of his right to privacy under the Fourth Amendment—must be dismissed because Plaintiff fails to allege the personal involvement of any Defendant.

Section 1983 creates a private cause of action against any person who, acting under color of state law, deprives an individual of his federally protected rights.  *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  To prevail in a section 1983 suit, a plaintiff must establish the "personal involvement" of the defendant against whom he asserts his claim.  *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010).  When assessing the sufficiency of a defendant's alleged "personal involvement," the Court may not apply a "special test for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).  Thus, a plaintiff must plead that each defendant, "through the official's own individual actions," has violated his rights.  *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Here, Plaintiff does not specify which Defendants, if any, ordered him to shower without a curtain in front of a camera or were otherwise personally involved in the violations he alleges. Instead, Plaintiff alleges only that he "was exposed" in the shower and that "officers were notified and given ample opportunity to fix and address" his concerns.  Compl. at 5.  Notably, Plaintiff

---

[2] Although Plaintiff appears to generally request "protection" under "Federal and State" law, he provides no specificity regarding any additional claims.

does not specify which officers were notified of his concerns and, in any event, mere notification of a legal transgression does not suffice to establish a defendant's personal involvement for purposes of a section 1983 claim, *see Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014) ("[A] supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official.").

Accordingly, because Plaintiff has failed to adequately allege that any Defendants were personally involved in a violation of his rights, his section 1983 claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

### 2. *Alleged Violation of Right to Privacy*

In the event Plaintiff attempts to replead his complaint, the Court provides the following discussion of the alleged violation of his right to privacy.

Plaintiff alleges that Defendants are liable for violations of his "rights to bodily privacy." Compl. at 5. The Court construes this allegation as attempting to assert a Fourth Amendment claim against each Defendant. *See Katz v. United States*, 389 U.S. 347, 350 (1967) (noting that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion"); *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (recognizing that the Fourth Amendment's protections extend to prisoners and pretrial detainees).

Although "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order," *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984), inmates do "retain a limited right to bodily privacy," *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). To state a cognizable bodily privacy claim, an inmate must allege that "(1) he exhibited an actual, subjective expectation of bodily privacy, and (2) prison officials lacked sufficient justification to

intrude on the inmate's Fourth Amendment rights." *Telesford v. Annucci*, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (internal punctuation omitted).

Here, Plaintiff's Fourth Amendment claim must fail because, as the Second Circuit has held, prisoners have "no expectation of privacy in the use of prison showers." *Id.* (holding that inmate could not state Fourth Amendment claim based on allegation that he was improperly recorded in the shower); *see Roundtree v. City of New York*, No. 15CV8198, 2018 WL 1586473, at *12 (S.D.N.Y. Mar. 28, 2018) (in case involving pretrial detainee, noting that "there is no expectation of privacy in showers, clinics, or other areas in which prison officials routinely monitor and search prisoners"). Accordingly, Plaintiff's allegations that Defendants viewed him in the shower through the camera fail to state a claim for violation of his right to privacy. *Accord Williams v. City of New York*, No. 1:20-CV-516 (MKV), 2021 WL 4267736, at *4 (S.D.N.Y. Sept. 20, 2021) (allegation that cameras were in examination room and may have been used to observe pretrial detainee was "insufficient to establish a violation of [the plaintiff's] 'limited right to bodily privacy'").

The Court acknowledges that the Second Circuit has recognized a privacy interest concerning the "involuntary viewing of private parts of the body by [prison officials] of the opposite sex." *See Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980). Courts in this Circuit, however, "distinguish between 'regular' and 'close' viewings of a naked prisoner of the opposite sex and 'incidental' and 'brief' viewings and find viewings of the latter type constitutional." *Langron v. Koniecko*, No. 3:21-CV-1531 (MPS), 2021 WL 5827065, at *2 (D. Conn. Dec. 8, 2021); *see also Little v. City of New York*, No. 13 CV. 3813 JGK, 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014) (discussing strip searches by officers of the opposite sex and noting that "'incidental' and 'brief' viewing of a naked prisoner" is constitutional); *Holland*, 197 F. Supp. 3d

6

at 543 (same). In light of this case law, Plaintiff's mere allegation that "there was a female officer working the shift" when he showered in front of a camera, Compl. at 5, fails to state a claim for a violation of his right to privacy, even when liberally construed in light of Plaintiff's *pro se* status. *See Miles v. Bell*, 621 F. Supp. 51, 67 (D. Conn. 1985) (stating that *Forts* "merely emphasizes that in order for inmates to show a violation of their privacy rights, they must show that the 'viewing' by guards of the opposite sex occurs on a regular basis").

Based on the foregoing, even if Plaintiff had not failed to plead Defendant's personal involvement in the events he describes in his complaint, the Court would nonetheless dismiss his section 1983 claim pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a cognizable Fourth Amendment claim.

### 3. ADA Claim

Although Plaintiff does not specify the provision under which he asserts his ADA claim, the Court interprets his complaint as alleging that Defendants violated Title II of the ADA by requiring him to shower in front of a camera, notwithstanding his PTSD diagnosis. The Court dismisses this claim without prejudice for the following reasons.

At the outset, Plaintiff's Title II claim fails because he has not adequately alleged that he is a "qualified individual" under the ADA. Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a *prima facie* case under the ADA, a plaintiff must demonstrate "(1) that [he] is a 'qualified individual' with a disability; (2) that the defendants are subject to [the ADA]; and (3) that [he] was 'denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise

discriminated against by defendants, by reason of [his] disability." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) (cleaned up).

In order to be considered disabled for purposes of the ADA, a plaintiff must have a "physical or mental impairment that substantially limits one or more major life activities" or "be[] regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Such activities may also include major bodily functions, such as "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

Here, while Plaintiff alleges that he has PTSD, he fails to provide any facts demonstrating that his PTSD substantially limits any of his major life activities. Although PTSD is a "mental impairment," a PTSD diagnosis is insufficient—on its own—to demonstrate that a plaintiff is a "qualified individual" under the ADA. *See Andino v. Fischer*, 698 F. Supp. 2d 362, 378–79 (S.D.N.Y. 2010). Rather, to avoid dismissal, a plaintiff must present allegations regarding how his condition has substantially limited one or more major life activities. *See id.* (dismissing ADA claim where plaintiff failed to explain how his PTSD limited a major life activity). Because Plaintiff has not done so, he has failed to plausibly allege a violation of the ADA.

Additionally, the Court notes that Plaintiff's complaint does not specify in what capacity he has sued Defendants. To the extent Defendants are being sued under Title II of the ADA in their individual capacities, such a claim must be dismissed, as Plaintiff may not bring a claim pursuant to Title II of the ADA against a state actor in his or her individual capacity, whether for

8

injunctive relief or damages.  *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Lenti v. Connecticut*, No. 3:20-cv-127 (SRU), 2020 WL 4275600, at *7 (D. Conn. July 24, 2020); *Cosby v. Rusi*, No. 3:20-cv-459 (MPS), 2020 WL 3577482, at *4 (D. Conn. July 1, 2020) ("The ADA . . . permit[s] suits only against defendants in their official rather than individual capacities.").

Insofar as Plaintiff is suing Defendants in their official capacities for monetary damages, it is unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity, and under what circumstances.  *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue).  If Plaintiff amends his complaint and seeks damages from Defendants in their official capacities, the Court will examine this issue in detail at that juncture.

Finally, the Court notes that Plaintiff has not sought injunctive relief against Defendants in their official capacities.  In some circumstances, such relief may be permissible.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003).  Based on his change of address notification, *see* ECF No. 13, however, Plaintiff appears to no longer be in the custody of the Connecticut DOC.  Therefore, a claim for injunctive relief, had he asserted one, would be moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (holding that an inmate's transfer from a prison facility generally moots claims for injunctive relief against officials of that facility).

For these reasons, the Court dismisses without prejudice Plaintiff's ADA claim pursuant to 28 U.S.C. § 1915A(b)(1).

## IV. CONCLUSION

For the reasons described herein, Plaintiff's Section 1983 and ADA claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1). If Plaintiff believes there are additional facts he can allege that will overcome any of the deficiencies identified in this ruling, he may file a proposed amended complaint by **February 21, 2023**. If Plaintiff fails to file a proposed amended complaint by that date, the Court may dismiss his claims with prejudice and order the Clerk to close this case.

SO ORDERED at Hartford, Connecticut, this 19th day of January, 2023.

                                  */s/ Sarala V. Nagala*
                                  SARALA V. NAGALA
                                  United States District Judge